BARR *v*. VAUGHAN AND HULSE.

Opinion delivered May 6, 1918.

DAMAGES—AGREEMENT FOR LIQUIDATED DAMAGES.—A. agreed to pay B. five dollars per night for a certain period of time, B. agreeing to keep his picture show closed during that time, the contract also

providing for $100 liquidated damages for a breach of the contract. B. performed his contract in full. *Held*, B. was entitled to $5 for each night, and was not limited to a recovery of only $100; but he was not entitled to the $100 in addition to an amount of damages exceeding that sum.

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; modified and affirmed.

*John Mayes* and *Walker & Walker,* for appellant.

1. The measure of damages is fixed by the contract at $100 liquidated damages, and in no event could more be recovered.

2. The court erred in its instructions. 100 Ark. 321; 83 *Id.* 192; etc.

*H. L. Pearson,* for appellees.

1. There is no error in the instructions. 74 Ark. 41; 73 *Id.* 338; 90 *Id.* 88, 256.

2. The damages were stipulated and settled by the contract. 1 Sutherland on Dam. 740. It is not penalty. 111 Ia. 693; 83 N. W. 791. But this does not cover the $5.00 per night compensation which amounted to $330.00. 87 Ark. 545.

3. The contract is free from ambiguity. 101 Ark. 353, 470; 105 *Id.* 213; 75 *Id.* 55; 89 *Id.* 368; 81 *Id.* 337. The court properly construed the law. The evidence sustains the verdict.

SMITH, J. The parties to this litigation entered into the following contract:

"This contract entered into this 7th day of February, 1917, by and between J. C. Vaughan and Max Hulse, of Fayetteville, Arkansas, party of the first part, and Frank Barr, of Fayetteville, Arkansas, party of the second part, witnesseth:

"1. That for and in consideration of the sums of money hereinafter provided to be paid by the party of the second part to parties of the first part, J. C. Vaughan and Max Hulse parties of the first part mutually agree and covenant with the party of the second part that they will close down their picture show now being operated

in the Ozark Theater and keep same closed so long as the party of the second part performs the conditions of this contract; that they will not be interested in, nor in any way connected with any picture show or any other entertainment that is given in the Ozark Opera House or Skydome Airdome during the life of this contract; that on the nights that the Ozark Theater or Skydome Airdome is opened for entertainment of any character during the life of this contract, that party of the second part is released from the obligation assumed by him to pay the parties of the first part the sum of five ($5) dollars per such nights as the said Ozark Opera House or Skydome Airdome is opened.

"2. That during any week that the Opera House or Skydome Airdome is opened three nights or more for picture shows or vaudeville, the party of the second part will be released from the payment of any sum of money to parties of the first part for that particular week.

"The party of the second part, Frank Barr, covenants and agrees that for every week night that the Ozark Opera House and Skydome Airdome is kept closed, except as otherwise provided herein, he will pay to the parties of the first part the sum of five ($5) dollars per night; said sum or sums of money to be paid weekly at the end of each week to parties of the first part at such time and place as may be agreed upon by the parties to this contract.

"It is further agreed by the parties hereto that this contract shall be in full force and effect from Monday, February 12, 1917, and to continue in force until and including the 28th day of April, 1917.

"The parties to this contract further mutually agree and covenant that in the event that any of them should in any way breach this contract or fail to perform the conditions hereof, then such party so violating or breaching the provisions thereof, shall owe and be indebted to

the other party in the sum of one hundred ($100) dollars to be collected as liquidated damages.

"J. C. Vaughan,
"Max Hulse,
"Parties of the First Part.
"Frank Barr,
"Party of the Second Part.
"Witness: A. G. Flowers."

There appears to be no substantial conflict in the testimony and it may be summarized as follows: Vaughan and Hulse were not the owners of the Opera House or Skydome Airdome, but had a lease thereon which expired on the 28th day of April, and they were required under their lease contract to pay $10.00 for each day's use of the leased property. The contract set out is dated the 7th day of February, and Barr admits that notwithstanding its execution on that day it was not to become effective as a contract unless and until Vaughan and Hulse secured their release from their contract of lease with the management of the opera house company. This release was obtained on the 9th day of February and thereafter Vaughan and Hulse discontinued all use of either the Opera House or the Airdome. It is also undisputed that Barr made an additional contract with the management of the Opera House and Airdome by which it, too, agreed to put on no shows until after the 28th day of April, and there was no violation of that contract, so that Barr had no competition in the show business from either Vaughan and Hulse or from the Opera House management during the period of time covered by the contract set out above.

Having reached the conclusion that there are no questions of fact for the jury, it is necessary only to construe this contract as applied to the facts which we have stated.

There was a verdict and judgment in favor of Vaughan and Hulse for $430; which includes $5 for each day during which the contract continued, exclusive of Sundays, and the sum of $100 named in the contract.

Appellant earnestly insists that the parties by their agreement have stipulated for liquidated damages and have named $100 as measuring that damage; and the correctness of this contention presents the real question in the case. We think it apparent that the contract contemplated that Vaughan and Hulse might keep their part of the contract, while the management of the Opera House and Airdome Company might give shows either at the Opera House or the Airdome and against this contingency it was provided that if either was opened three nights or more in any week nothing should be paid Vaughan and Hulse for that week. In other words, Barr was attempting for the time covered by the contract to free himself from competition and was to pay the stipulated sum only during the period of time when he had this immunity.

When the contract is read as a whole, we do not think that this last clause was intended to deprive Vaughan and Hulse of the sum which would be due them when they had finally and fully performed their part of the contract. In that event there could be no necessity for any stipulation in regard to liquidated damages, because the contract plainly specified that Vaughan and Hulse should be paid $5 for each night during which the contract was performed and no other damage could accrue. It was not proper, therefore, to allow Vaughan and Hulse the $5 for each night and the $100 in addition, and error was committed in entering up judgment therefor. The judgment of the court below will, therefore, be modified and it will be reduced to the sum of $330, and for that sum affirmed.