QUAILE & COMPANY *v.* WILLIAM KELLY MILLING COMPANY.

Opinion delivered November 23, 1931.

*Evans & Evans,* for appellant.

*Cochran & Arnett* and *C. E. Chalfant,* for appellee.

HART, C. J., (after stating the facts). At the outset it may be stated that the contract was reduced to writing and signed by the parties. It was contemplated that the written contract should be confirmed at the home office of appellee, and this was done both by telegram and by letter when the contract was received by appellee at its home office. It is true that a member of the firm of appellants testified that it was also intended that appellant should sign the confirmation of the contract, and that this was never done. This evidence was not admissible because it tended to contradict and vary the terms of a valid and unambiguous written contract which had been signed by the parties and was complete in itself. *Colonial & United States Mortgage Co.* v. *Jeter,* 71 Ark. 185, 71 S. W. 945; *Ogletree* v. *Smith,* 176 Ark. 597, 3 S. W. (2d) 683; and *Wright* v. *Marshall,* 182 Ark. 890, 33 S. W. (2d) 43.

It is earnestly insisted by counsel for appellants, however, that the damage clause of the contract, which

forms the basis of this lawsuit, should be construed as a penalty and not as liquidated damages. The general rule is that contracts for liquidated damages, when reasonable in their character are not to be regarded as penalties and may be enforced between the parties. But agreements to pay fixed sums, plainly without relation to any probable damage which may follow a breach, will not be enforced. *Kothe* v. *Taylor*, 280 U. S. 224, 50 S. Ct. 142; and *Robbins* v. *Plant*, 174 Ark. 639, 297 S. W. 1027, 59 A. L. R. 1128.

There is no sound reason why persons capable of contracting may not agree upon the subject of liquidated damages when fairly entered into with the view to compensation for anticipated loss. So it is generally held that, where the intention of the parties on this point is clearly ascertained from the written contract, effect will be given to the provision for liquidated damages where such damages are uncertain in nature or amount, or difficult to ascertain, or where the amount stipulated for is not so greatly disproportionate to the damage which might result from the failure of the seller to deliver the property as to show that the parties must have intended a penalty, and could not have meant liquidated damages. There must be an element of uncertainty and the apparent absence of any reasonable connection between the method of computation of the loss and the actual performance of the contract. In other words the parties under the law may contract as to the measure of damages where the liquidation bears a reasonable relation to the probable damages for the breach.

The evidence in the present case is uncontradicted that the parties contemplated that the seller should manufacture a particular brand of flour and deliver it to the buyer. The price of wheat fluctuates greatly, and it was necessary for the seller to buy an amount of wheat necessary to cover the contract and carry it until the time came for manufacturing the flour in order that it might not suffer great loss. Orders were taken to the end that the mill would be kept busy during the year, filling

the contracts as they came due. The contract was not for the sale and delivery of flour by the seller, which was purchased in the open market and delivered to the buyer, but it was a contract for the manufacture of a certain brand of flour from wheat. Therefore, wheat was the basic raw material; and, inasmuch as the price of it fluctuated greatly, what damages might be suffered from the failure on the part of the buyer to carry out his part of the contract varied greatly and were uncertain.

It was said in *Sheffield-King Milling Co.* v. *Domestic Science Baking Co.*, 95 Ohio St. 180, 115 N. E. 1014, by the Supreme Court of Ohio:

"The parties agreed that wheat, the thing from which the flour was to be made, should be the basis upon which to calculate the damages. They could, of course, have agreed that the flour should be such basis, but they did not do so. That was a matter for them to agree about. They did not fix an arbitrary lump sum which might turn out to be wholly inequitable, but fixed a method, the chief element of which was the price of wheat from which the flour was to be made, a matter not within the control of either. In this situation, when the plaintiff proved it had performed the terms of the contract on its part, had purchased the necessary wheat, and showed the damages that had accrued on the basis agreed on, it was entitled to recover."

In view of the situation of the parties and the surrounding circumstances, it cannot be said that the stipulated damages appear to be greatly in excess of the damages sustained or to have no relation thereto. The surrounding circumstances indicate that it would be necessary to purchase wheat and store it until the time to manufacture it into flour, and also to consider the cost of manufacturing the wheat into flour. It is a matter of common knowledge that the price of wheat fluctuates greatly, and that the cost of running a mill or manufacturing plant would be greatly increased where it was necessary for it to be idle at uncertain intervals. Similar provisions for liquidated damages in contracts for the manufacture and sale of flour have usually been sus-

tained. *International Milling Co.* v. *Reierson,* (S. D.) 225 N. W. 218, and cases cited; *Yera, Andrews & Thurston, Inc.,* v. *Randozzo Macaroni Mfg. Co.,* 315 Mo. 927, 288 S. W. 20, and cases cited; *Sheffield-King Milling Co.* v. *Jacobs,* 170 Wis. 389, 175 N. W. 796; *Larabee Flour Mills Co.* v. *Carignano,* 49 Fed. (2d) 796; and *Rock* v. *Gaede,* 111 Kan. 214, 207 Pac. 323, 27 A. L. R. 1152.

In this connection we call attention to the case of *Kirchman* v. *Tuffli Brothers Pig Iron & Coke Co.,* 92 Ark. 111, 122 S. W. 239, where it was held that, upon a breach by the vendee in a contract for the sale of goods, the general rule is that the measure of the vendor's damages is the difference between the price fixed by the contract and the market value of the goods at the time and place of delivery, provided the contract price exceeds such market value.

That principle of law would apply here, if there had been no valid contract for stipulated damages, and it might be said to apply in any event, where no steps had been taken in the performance of the contract, and no expense had been incurred. If there had been a breach of the contract in the present case before the seller had gone to the expense of purchasing wheat to be used in the fulfillment of its contract, then the principle of law just referred to would govern. But, as already pointed out, the seller, as soon as the contract was executed, purchased sufficient wheat to cover the terms of its contract with the buyer, and kept it on hand until the contract was terminated because the buyer refused to send shipping instructions to the seller. The undisputed evidence shows that the wheat was not sold by the seller until the contract was terminated.

On the cross-appeal, but little need be said. It appears from the testimony that the salesman of appellee never received any commission for the sale made to appellants, and contemplated none until the flour was delivered. Therefore, the court properly held that the seller was not entitled to recover under clause (b), twenty cents per barrel as the cost of selling.

Therefore the decree will be affirmed, both on the appeal and the cross-appeal.