## UNITED STATES v. MANUFACTURERS CAS. INS. CO.

United States District Court,
S. D. New York.
June 16, 1953.

J. Edward Lumbard, Jr., U. S. Atty. for the Southern Dist. of New York, New York City, for plaintiff, James A. Devlin, Asst. U. S. Atty., Lester Friedman, Atty., Immigration & Naturalization Service, Dept. of Justice, New York City, of counsel.

James S. Regan, Jr., New York City, for defendant.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for Union of Orthodox Rabbis of the United States and Canada, Vaad Hatzala, National Council of Young Israel, and Agudath Israel Youth Council, amici curiae, Herbert Tenzer and Herbert Berman, New York City, of counsel.

DIMOCK, District Judge.

The United States sues the Manufacturers Casualty Insurance Company to recover $500, the full amount of a bond posted by defendant with the United States on behalf of an alien, Abram Brull, a non quota immigrant student who entered under section 4(e) of the Immigration Act of May 26, 1924, as amended, formerly 8 U.S.C. § 204(e) now covered by 8 U.S.C. §§ 1101(a)(15)(F), 1184. The bond was conditioned upon the departure of Brull from the United States on or before June 27, 1948. Brull did not depart on or before that date. Defendant moves for summary judgment dismissing the complaint and plaintiff counters with

a cross motion for summary judgment for the amount demanded in the complaint.

The doubt as to defendant's liability arises from the fact that under section 4 of the Displaced Persons Act of 1948, adopted June 25, 1948, set out in the margin,[1] Brull went through the procedure prescribed by that section and obtained a concurrent resolution of Congress favoring the granting of the status of permanent residence to him and the Attorney General recorded his admission for permanent residence as of the date of his entry into the United States, March 8, 1948.

The form of the bond involved is all important. After reciting that Manufacturers Casualty Insurance Company, its heirs, executors, administrators, successors and assigns is bound to the United States in the sum of $500 "as liquidated damages and not as a penalty." The body of the bond reads:

"Whereas, Abram Brull alien, aged 26 years, a native of Poland, who arrived at the port of New York per Marine Marlin, on the 8th day of March, 1948, has applied for permission to enter or remain temporarily in the United States as an immigrant student in accordance with the provisions of section 4(e) of the Immigration Act of 1924.

"And Whereas the appropriate immigration and naturalization authorities at the port of ................ or the Attorney General in his discretion, has decided to permit said alien to enter or remain temporarily in the United States as such immigrant student upon the giving of a suitable and proper bond or undertaking containing the conditions hereinafter mentioned:

"Now, Therefore, the conditions of this obligation are such that if the said alien shall actually depart permanently from the United States, without expense to the United States, upon failure to maintain the status of an immigrant student under which temporarily admitted or in any event on or before June 27th, 1948, and if the Immigration and Naturalization officer in charge at the port of New York shall receive from the above-bounden obligors at least five (5) days prior to such departure information as to date thereof and name or designation of vessel or other means of conveyance by which

1. Section 4 of the Displaced Persons Act of 1948:

"Sec. 4. (a) Any alien who (1) entered the United States prior to April 1, 1948, and (2) is otherwise admissible under the immigration laws, and (3) is a displaced person residing in the United States as defined in this section may apply to the Attorney General for an adjustment of his immigration status. If the Attorney General shall, upon consideration of all the facts and circumstances of the case, determine that such alien is qualified under the provisions of this section, the Attorney General shall report to the Congress all of the pertinent facts in the case. If during the session of the Congress at which a case is reported, or prior to the end of the session of the Congress next following the session at which a case is reported, the Congress passes a concurrent resolution stating in substance that it favors the granting of the status of permanent residence to such alien the Attorney General is authorized, upon receipt of a fee of $18.00, which shall be deposited in the Treasury of the United States to the account of miscellaneous receipts, to re-

cord the admission of the alien for permanent residence as of the date of the alien's last entry into the United States. If prior to the end of the session of the Congress next following the session at which a case is reported, the Congress does not pass such resolution, the Attorney General shall thereupon deport such alien in the manner provided by law: * * *

"(b) When used in this section the term 'Displaced Person residing in the United States' means a person who establishes that he lawfully entered the United States as a non-immigrant under section 3 or as a nonquota immigrant student under subdivision (e) of Section 4 of the Immigration Act of May 26, 1924, as amended, and that he is a person displaced from the country of his birth, or nationality, or of his last residence as a result of events subsequent to the out-break of World War II; and that he cannot return to any of such countries because of persecution or fear of persecution on account of race, religion or political opinions." June 25, 1948, ch. 647 § 4, 62 Stat. 1011, 50 U.S. C.A.Appendix, § 1953.

the alien shall depart, then this obligation to be void; otherwise, to remain in full force and virtue."

The exaction of such a bond is authorized by section 215 of Title 8 U.S.C. "to insure that, at the expiration of such time or upon failure to maintain the status under which admitted, he will depart from the United States".

■ The first question is whether, in spite of the alien's failure to depart on or before the date fixed, there was no breach of the bond. The only event that occurred prior to June 27, 1948, the date fixed for the alien's departure, which could be said to have prevented the alien's failure to depart from constituting a breach of the bond is the passage of the Displaced Persons Act of 1948 on June 25, 1948. To reach that conclusion, one would have to say that this invalidated all outstanding bonds conditioned for the departure of aliens who were eligible for award of permanent status by Congress and the Attorney General pursuant to the provisions of the Act. I can attribute no such intention to Congress. There is no reason why such general amnesty should be extended to obligors on bonds conditioned for the departure of eligible aliens when in many cases the aliens would either fail to apply for the benefits under the Displaced Persons Act or fail to obtain them.

The only possible alternative under which defendant may escape liability for the undoubted breach which occurred on June 27, 1948, is a subsequent release of defendant on account of the final admission of the alien as a permanent resident nunc pro tunc as of March 8, 1948, the date of his original arrival.

■ In my opinion, Congress and the Attorney General, pursuant to a carefully laid out statutory plan, did so release defendant by retroactively admitting the alien as a permanent resident as of a date prior to the breach of the bond.

■ The bond was carefully drawn to avoid any imputation that it provided for a penalty. Although, since the bond ran for the benefit of the people rather than a private individual, it might lawfully have provided for a penalty, Illinois Surety Co. v. United States, 2 Cir., 229 F. 527, the instrument bound defendant to pay $500 "as liquidated damages and not as a penalty". What we have, therefore, is an agreement under which the parties liquidated the actual damages which would flow from a breach at $500 and where the obligee has retroactively and voluntarily eliminated the possibility that there ever can be any actual damages.

■ All the defendant ever agreed to do was to pay $500 if the alien did not depart "without expense to the United States, upon failure to maintain the status of an immigrant student * * * or in any event on or before June 27th, 1948." The sum of $500 liquidated damages was supposed to cover the expense which the United States would suffer if the alien did not so actually depart. If there had been no provision for liquidated damages, the United States could have recovered nothing except the expenses involved in deporting the alien for breaking the conditions of his admission. The provision for liquidated damages did no more than fix the amount of such expenses at an agreed figure; it did not make damages recoverable even if none could be suffered. The United States by solemn action of the Congress and the Attorney General has retroactively made Abram Brull a permanent resident and thus put it out of his power ever to deport him as an alien who has broken the conditions of his admission. Since the United States, as of a date prior to the breach of the bond, thus voluntarily prevented the possibility that it might suffer damages from such breach, it cannot now collect damages for that breach. Even if only one of the factors of loss to cover which a provision for liquidated damages has been made is eliminated liquidated damages cannot be recovered. Bedford v. J. Henry Miller, 4 Cir., 212 F. 368; Quaile & Co. v. William Kelly Milling Co., 184 Ark. 717, 43 S.W.2d 369, 79 A.L.R. 183. Here, where all of such factors have been eliminated, no liquidated damages can be recovered.

It may well be that the action of the United States in admitting Brull would have constituted a release of liability for the breach of the bond even if that action had not included admitting Brull as of a date

prior to the breach. The action of the United States in making the admission retroactive, as of March 8, 1948, is however, a clear indication of the intention of the United States to release the liability of defendant which accrued thereafter upon the breach of the bond on June 27, 1948.

The complaint is dismissed.