UNITED STATES of America, Plaintiff,

v.

MANUFACTURERS CASUALTY INSURANCE COMPANY, Defendant (five cases).

United States District Court
S. D. New York.
Dec. 11, 1957.

**320**

Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City, for plaintiff. Roy Babitt, Sp. Asst. U. S. Atty. and Gen. Atty., Immigration and Naturalization Service, New York City, of counsel.

James S. Regan, Jr., New York City, for defendant.

Tenzer, Greenblatt, Fallon & Kaplan, Herbert Tenzer and Herbert Berman, New York City, for Union of Orthodox Rabbis of the United States and Canada, Vaad Hatzala, National Council of Young Israel and Agudath Israel Youth Council, amici curiae.

HERLANDS, District Judge.

The Government brings these five actions to recover $3,500 on the defendant's bonds. The bonds were conditioned to insure the departure of the aliens named in the respective bonds upon the aliens' failure to maintain their status (as students or as visitors for pleasure) under which status they were temporarily admitted to the United States, and also to insure their departure, in any event, on or before a fixed date.

Plaintiff has moved and defendant has cross-moved for summary judgment in each of the five cases. Certain facts in each of the said cases have been stipulated.

The motions and cross-motions for summary judgment are denied for the reasons hereinafter set forth.

■ Although both parties have moved for summary judgment, the Court cannot grant any of the motions when, as here, the record discloses genuine triable issues of fact. 6 Moore, Federal Practice, para. 56.13 (2d ed. 1953).

An analysis of the record reveals that there are such genuine factual issues as to the meaning of certain clauses in the bonds and the parties' intention with respect to those clauses.

■■ The construction of a contract ordinarily poses an issue of law for the court. But this rule applies only where there is no factual issue. Where the contract contains ambiguous terms and the parties' intention in using such language is subject to *bona fide* and material dispute, parol evidence is admissible to resolve those factual issues; and, consequently, a motion for summary judgment must be denied. Boro Hall Corp. v. General Motors Corp., 2 Cir., 1947, 164 F.2d 770; Rolle Mfg. Co. v. Marco Chemicals, Inc., D.C.N.J.1950, 92 F.Supp. 218. Cf. Michael Rose Productions v. Loew's Incorporated, D.C.S.D. N.Y.1956, 143 F.Supp. 606.

This proposition is expressive of the policy expounded in Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130, 135:

"We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to trial where there is the slightest doubt as to the facts * *. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which the courts have

been established. Denial of a trial on disputed facts is worse than delay. * * * The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered."

In the years since the above pronouncement, the Court of Appeals for this circuit has continued to sound emphatic warnings that the summary disposition of lawsuits should be utilized only with meticulous care and utmost caution. Subin v. Goldsmith, 2 Cir., 1955, 224 F.2d 753, certiorari denied 1955, 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779; Alvado v. General Motors Corp., 2 Cir., 1955, 229 F.2d 408; Teung v. Dulles, 2 Cir., 1956, 229 F.2d 244; United States v. Holland America Line, 2 Cir., 1956, 231 F.2d 373; Syracuse Broadcasting Corporation v. Newhouse, 2 Cir., 1956, 236 F.2d 522. Cf. Wright, Rule 56(e): A Case Study On The Need For Amending The Federal Rules, 69 Harv.L.Rev. 839, 856 (1956).

None of the five cases at bar are factually identical. However, they do disclose the same basic fact pattern. A statement of the pattern embodied in all five cases will facilitate the discussion of common issues of fact. Variant issues, posed by particular facts in the individual cases, will be separately discussed.

### The Basic Fact Pattern

Four of the aliens applied for temporary admission to the United States as students under section 4(e) of the Immigration Act of 1924, former 8 U.S.C.A. § 204(e).[1] Two other aliens (a single suit was brought for collection of the bonds posted for Berta Appel and her infant son Chaskel Appel) applied for temporary admission as visitors, under sections 3(2) and 15 of the Immigration Act of 1924, former 8 U.S.C.A. §§ 203(2) and 215.[2]

All of the aliens had French travel documents.

Each was allowed to enter the United States on condition that he post a bond guaranteeing that he maintain the status under which he was admitted and that he leave the United States on or before a certain date (referred to herein as the departure date). Such bonds were posted by defendant on behalf of the aliens.

In every instance, the departure date accrued before the expiration date of the alien's French travel documents.

In all five cases, the aliens remained in the United States beyond the departure date, in violation of both the condition upon which they entered the United States and the terms of the bond.

Separate deportation proceedings were instituted against each of the aliens.

Eventually, each of the aliens was admitted to the Unied States for permanent residence. This was accomplished either by the method of voluntary departure and pre-examination (former 8 C.F.R. Part 142) or by the method of adjustment of status under section 6 of the Refugee Relief Act of 1953, 50 U.S.C.A.Appendix § 1971 et seq.

In no case was the record of admission to the United States for permanent residence expressly made retroactive to the date of the original entry.

In each case, well before the alien was permanently admitted to the United States, the Government informed the defendant of the breach of the conditions of the bond.

In two instances (re the bonds posted for Berta and Chaskel Appel and the bond posted for Isaac Appel), an action on the bond was instituted before the alien was permanently admitted to the United States. In the other three cases, such action was begun after such permanent admission.

### Ambiguities Contained in the Bonds
*The Meaning of "Permanent"*

The terms of all of the bonds are identical except that, in the bonds posted for Berta and Chaskel Appel, a clause was inserted after the specified departure date, continuing the defendant's liability

---

1. Now 8 U.S.C.A. § 1101(a) (15) (F).

2. Now 8 U.S.C.A. §§ 1101(a) (15) (B), 1184.

if there was a proper extension of the departure date.

As an affirmative defense in each of the five answers, the defendant alleges, in substance, that it was within the intention of the parties that if the named alien applied for and obtained an adjustment of status under and pursuant to the Immigration Act then existing or hereafter enacted, the conditions of the bond would be fulfilled and the bond cancelled.

The Government, in challenging this defense, argues that the Government hardly could have "contemplated violation of its immigration laws (i. e., that the aliens would remain in the United States after the departure date) and subsequent application for its discretionary relief" (plaintiff's brief, p. 51).

The stipulations of facts herein do not refer to the parties' intention on this point.

There has been no reply to the above defense.

If the bonds were unequivocal, evidence of the asserted intention of the parties would be inadmissible. However, the bonds do contain certain latent ambiguities, which may be resolved by parol evidence not now before the Court. Such parol evidence—as indicated below—might relate to the parties' intention with respect to the effect of a subsequent permanent admission of these aliens to the United States.

A latent ambiguity inheres in the following clause appearing in each of the five bonds: "The said alien shall actually *depart permanently* from the United States." (Emphasis supplied.)

If the Government, in exacting this bond, simply desired the alien to depart at the end of a stated period, it could easily have said precisely that, i. e., depart from the United States on or before a certain date. Instead, the word "permanently" was added. In this connection, it is important to keep in mind that it was the Government which drew up the form of the bond in each case.

The meaningful word "permanently" cannot be summarily dismissed and disregarded as due to inept or inartistic draftsmanship.

That the word was used deliberately is indicated by the fact that each bond deals with an alien who was to "remain temporarily" in the United States; and the word "temporarily" appears three times in the body of the bond.

Several different inferences as to the parties' intention may be drawn from the use of the word "permanently." It may be reasoned that the parties intended the words "depart permanently" to mean that the alien must leave the United States on or before the departure date specified in the bond *and* never return. This seems rather extreme. Pursuing the logic of this view to its necessary implications would require holding the defendant bonding company liable if the alien left on or before the departure date but was later readmitted to the United States. Yet, if the parties in fact so contracted, they would be so bound; and the Court would enforce the contract.

On the other hand, upon the presentation of evidence it may appear that the word "permanently" signified nothing in fact and can thus be treated as immaterial and irrelevant in assessing the obligation of the defendant surety.

A third possible line of reasoning is that these bonds were actually directed only at a class of persons who could never lawfully be admitted to the United States "permanently," that is, a class of persons who, when once they depart, must "depart permanently." In the context of this logic, the purpose of the bond must have been to insure the departure of only such a class of persons, because there would be no consistent reason to insure the "permanent" departure of persons who were legally admissible to the United States on a permanent basis. If this be so, then the parties had intended (and so implicitly agreed) by the use of the words "depart permanently," that the bond would be of no effect if it should come to pass that these aliens were lawfully admitted permanently to the United States —for a permanent admission would eliminate the *raison d'etre* of the bond.

Under such a view, while ordinarily one would look to the departure date in order to determine a breach of the bond, the parties intended otherwise in the case of these bonds. Since *arguendo* there was an implicit agreement that the bond would be breached only if those *who were disqualified from permanent admission to the United States* failed to depart from the United States, it would be a defense to an alleged breach for failure to depart on the specified date that the alien named in the particular bond was not a member of the class of persons for whose permanent departure this sort of bond was intended. Admission of the alien to the United States permanently would be proof of the alien's status, even though this status was fixed or confirmed at a date subsequent to the departure date specified in the bond.

Moreover, the defendant claims that it contracted in the light of the Immigration Service's policy not to treat departure bonds as breached if the alien was eventually permanently admitted to the United States.

This Court is not suggesting that any of the foregoing interpretations may turn out to be correct in the light of a full factual inquiry. On the present record and in the present posture of the cases, the contentions advanced by the parties cannot be disposed of summarily as a matter of law. What the parties intended when they entered into these bonds can be determined only at a plenary trial.

*The Meaning of "Liquidated Damages"*

The bonds provide that the sum stated therein is "as liquidated damages and not as a penalty." This clause gives rise to two overlapping questions, one of fact and the other of law. The defendant argues that the "damages" mentioned in the bonds refers only to the Government's expenses directly involved in deporting the aliens. On this premise, the defendant claims that, since none of the aliens were in fact deported, the Government did not suffer damages; and, because the

bonds are not penalty bonds, the Government may not collect on them.

On the other hand, the Government asserts that it has suffered damages by virtue of the fact that it was compelled to initiate deportation proceedings when the aliens remained beyond their departure date. Thus, a factual issue is raised as to the damages reasonably contemplated by the parties when the bonds were executed: the Government contends that it intended any damages, regardless of the fact that the aliens were not eventually deported; the defendant contends that these departure bonds were meant to cover only the cost of deporting the aliens, when and if deported.

An additional argument advanced by the Government is that it need not prove any damages in order to collect on the bonds. However, it is not necessary for the Court to rule upon that proposition of law if the parties in fact intended "damages" to mean only the expense of deporting the aliens. If the parties so intended, the liquidated damage clause would not become operative in the absence of deportation expenses.

The parties have not stipulated that there is no evidence on this issue. The Court will not now attempt to decide the question of law involved in view of the fact that, upon a trial, evidence material and relevant to the issue may be adduced, thereby re-defining the issue or requiring a different approach to its resolution.

### Government Action in Individual Cases

The course of action pursued by the Government in several of the cases might arguably constitute waiver. However, the facts now before the Court are insufficient to warrant an adjudication of that issue at this time.

Moreover, those facts that the Court has been able to cull from the present record seem to be only incidental to the parties' apparent purpose in submitting these cases to the Court, i. e., to obtain a ruling extending or limiting the decision

in United States v. Manufacturers Cas. Ins. Co., D.C.S.D.N.Y.1953, 113 F.Supp. 402.

### Delay in Ruling on Applications for Extensions

In the case of Berta and Chaskel Appel, the departure date was extended, with the defendant's consent, until July 8, 1950. On June 26, 1950, these aliens applied for a further extension. This application was denied on January 31, 1951, more than six months after the fixed departure date. These circumstances might support a contention that there has been a waiver by the Government. That mixed question of fact and law should not be decided on these motions for summary judgment.

In the case of Isaac Appel, his time to depart was extended, with defendant's consent, until July 8, 1950. He applied on June 26, 1950 for an extension. The application was denied on November 6, 1950. For the same reasons expressed in the discussion of the Berta and Chaskel Appel case, the possible issues of fact and law should be deferred to the trial.

In the case of Frantisek Braun, there were neither extensions nor applications for extensions; and there apparently is no issue of waiver.

In the case of Edith Garfunkel, nee Klein, the departure date was June 4, 1950. An application for an extension of one month was filed in May 1950. No final action was ever indicated.

In the case of Joseph Weinstock, the departure date was March 25, 1950. He applied for an extension in March 1950. The application was denied on July 18, 1950.

The last two cases pose an issue of waiver that should be deferred to the trial.

In the stipulations of fact it is stated that each of the aliens was to post a bond "to guarantee that he would depart from the United States on or before [date], or *within the period of extension thereafter granted.*" (Emphasis supplied.) The record documents show that only the bonds of Berta and Chaskel Appel contained such a clause.

The Government may be able to prove, upon the trial, that such a clause is to be inferred in each of the other bonds as a matter of fact and law, and that the clause, as written, covers the interim "extensions" attributable to any delay in deciding applications for extensions. Such issues are not settled but raised by the parties' present stipulations of fact. The issues should be deferred to the trial.

The defendant may contend that the Government's action or inaction encouraged and induced the aliens to remain in the United States beyond their set departure date. This may raise a material issue of fact that should be deferred to the trial.

### Date of Breach

The Government's fundamental position rests on the proposition that the bonds were breached as of the departure date fixed in each bond. However, in some of the stipulations of fact, a date other than the departure date is treated as the date of breach. In other stipulations, no such date is indicated. These dates are important in deciding two factual questions: when, if ever, the bond was breached; and whether there has been a waiver of the breach by the Government. In this area of evidence, the issues should be deferred to the trial.

The following are some of the inconsistencies:

(1) Re Berta and Chaskel Appel:

The stipulated facts contain no stated date as of when the bond was considered breached. The résumés of a Government agent reviewing the case (but not included in the stipulated facts) indicates the breach to be as of July 8, 1950, the extended departure date. That ostensible fact is not included in the stipulation. The circumstances indicate the possible existence of a factual issue.

(2) Re Isaac Appel:

The bond was declared breached as of December 1, 1950. The departure date,

as extended with the defendant's consent, was July 8, 1950. After denying the application for an extension, the Immigration Service set December 1, 1950 as a satisfactory departure date.

(3) Re Frantisek Braun:

No dates are indicated.

(4) Re Edith Garfunkel:

The bond was declared breached as of June 4, 1950, the original departure date.

(5) Re Joseph Weinstock:

The bond was declared breached as of August 15, 1950. The departure date was set for March 25, 1950. After the denial of the alien's application for an extension, August 15, 1950 was set as a satisfactory departure date.

*Expiration of Travel Documents*

In all of the cases now before the Court, the aliens had French travel documents that expired on certain dates as stated therein. None of the aliens was a French citizen, with the possible exception of Chaskel Appel, who was listed on the bond as a native of France, but as a Roumanian citizen, in the stipulated facts. Pending the Government's delayed rulings on applications for extensions in some of the cases, the French travel documents expired. These circumstances, together with the other evidence in the cases, may raise the issue of waiver by the Government of breaches of the defendant's bonds.

The following summary indicates the state of facts presented to the Court:

| Alien | Expiration Date of French Travel Document | Date of Government's Ruling |
| --- | --- | --- |
| Berta and Chaskel Appel | 9/26/50 | 1/31/51 |
| Isaac Appel | 9/26/50 | 11/6/50 |
| Frantisek Braun | 7/14/50 | No application |
| Edith Garfunkel | 8/4/50 | Applied 5/50; no final ruling indicated |
| Joseph Weinstock | 8/12/50 | 7/18/50; satisfactory departure date was 8/15/50 |

On the basis of the incomplete and unsatisfactory factual record now before it, the Court has determined that the factual issues of governmental consent and waiver should be resolved upon a full trial and not on these motions for summary judgment.

The foregoing discussion of unresolved factual issues also leads to the conclusion that the judicial decisions relied on by the parties do not serve as either controlling or persuasive precedents for purposes of the motions now before this Court.

The motions and cross-motions are denied in all respects.