O'GUINN VOLKSWAGEN, Inc. *v.* Harvey LAWSON and Nettis Ann LAWSON

73-212                                      505 S.W. 2d 213

Opinion delivered February 19, 1974

*Dickey, Dickey & Drake, Ltd.*, for appellant.

*Owens & Fikes*, for appellees.

JOHN A. FOGLEMAN, Justice. Appellees obtained a judgment against appellant for damages resulting from injuries to appellee Nettie Ann Lawson when she fell on a sloping asphalt ramp near the exit from the showroom of appellant, an automobile dealer. The judgment was based upon a jury verdict. For reversal, appellant contends the circuit court erred in denying its motion to quash the service of summons on it, in giving an instruction advising the jury that by ordinance of the City of Pine Bluff, certain sections of the Southern Standard Building Code applied and in denying its motion to strike amendments to appellees' complaint relating to applicability of the Southern Standard Building Code. We find no reversible error.

Appellant's first contention is based upon a recital in the return on the summons that it was served upon LeRoy O'Guinn, manager of and for O'Guinn Volkswagen, Inc. It contends that, because the applicable statute, Ark. Stat. Ann. § 27-346 (Repl. 1962), required service upon the president or other chief officer of the corporation unless he was not to be found in the county, the return was invalid. After appellant admitted that LeRoy O'Guinn was president of the corporation at the time of the service, appellees moved that the return be amended to reflect that service was had upon the president. The circuit judge properly denied appellant's motion to quash and granted appellees' request for amendment of the return.

Substance rather than form has been the watchword in matters pertaining to pleading and procedure in Arkansas, at least since the adoption of the Civil Code. The clear intention of our statutes pertaining to service of process on corporations is to make sure that service is had upon a person who is most likely to have principal responsibility for the corporation's affairs, if he is available, and, if not, upon one who has substantial responsibility. In this case, the objective was to serve the summons upon the person who was president of O'Guinn Volkswagen, Inc. Since the process was served on that person, neither he nor the corporation could possibly have been misled or prejudiced by the return on the summons. It is doubtful that he ever saw the return unless his attorney, after having inspected the file in the case, showed it to him.

Arkansas Statutes Annotated § 27-334 (Repl. 1962) specifically authorizes the court to permit a return to be amended to speak the truth. Furthermore, a court may, at any time, in the furtherance of justice, amend any proceeding to conform it to the facts proved when the amendment does not substantially change the claim or defense. Our courts are specifically directed to disregard any error or defect in the proceedings which do not affect substantial rights of the adverse party. Ark. Stat. Ann. § 27-1160 (Repl. 1962). Under the authority of this section, we have permitted summonses to be amended to correct clerical errors, even with retroactive effect. See, e.g., *Rhinehardt* v. *Light*, 225 Ark. 1045, 287 S.W. 2d 463; *Chicago Mill & Lbr. Co.* v. *Lamb*, 174 Ark. 258, 295. S.W. 27; *Lowenstein* v. *Gaines*, 64 Ark. 499, 43 S.W. 762.

If the summons itself can be amended, it should follow, as a matter of course, that a return should be amendable to speak the truth. As early as 1879, we recognized that a defective return could be amended to show the place of service, where this was essential to validity of the service, saying that it had been the practice of this court to allow amendments of returns, by leave of court, even after an appeal. *St. Louis I. M. & S. Ry. Co.* v. *Yocum*, 34 Ark. 493. In that case, where the service was upon the agent of the defendant railroad company at its depot house, we also said:

> Where a summons has been *in fact* duly served, it is the duty of the defendant to take notice of it, unless all defense be waived. He can not shelter himself under a defective return from the consequences of his default, if the true facts be at any time brought properly upon the record. He could not, in the action, question the truth of the return in either case, and his remedy for a false return would be as effective in the case of the amended as the original return.

We have held that amendment of a proof of publication of a warning order to speak the truth was proper, even after judgment, upon the same rationale, i.e., jurisdiction is dependent upon the service (publication) not by the return (proof of publication). *Blackwell Oil & Gas Co.* v. *Maddux*, 181 Ark. 726, 27 S.W. 2d 514.

Cases relied upon by appellant such as *Nutrena Mills* v. *Parsons Feed & Farm Supply, Inc.*, 234 Ark. 1058, 356 S.W. 2d 421, do not in any way conflict with or detract from the effectiveness of our statement in the *Yocum* case. In *Nutrena Mills*, we pointed out that the service was void because the unavailability of the president of the corporation was neither recited in the return nor shown by the evidence. In *Arkansas Construction Co.* v. *Mullins*, 69 Ark. 429, 64 S.W. 225, we held the service insufficient because neither the record nor the return showed whether the defendant corporation was foreign or domestic, or that the agent of the corporation upon whom the service was had was of such character as to render it fair, reasonable and just to imply an authority on his part to receive service. A motion to quash was filed in *Ark. Coal, Gas, Fire-Clay & Mfg. Co.* v. *Haley*, 62 Ark. 144, 34 S.W. 545, but it does not appear that any effort was made to show that the facts requisite to valid service actually existed. In *Vulcan Const. Co.* v. *Harrison*, 95 Ark. 588, 130 S.W. 583, we clearly recognized that the existence of the requisite facts might be shown by evidence as well as by the return.

Appellees also call our attention to the fact that appellant, by answering without expressly preserving the point raised in its motion to quash, waived any defect in the return. See *Chicago Mill & Lbr. Co.* v. *Lamb*, supra; *Barry* v. *Armstrong*, 161 Ark. 314, 256 S.W. 65; *Vulcan Construction Co.* v. *Harris*, supra.

Appellant gives four reasons why it feels that instruction No. 9 should not have been given. They are:

1. There was no ordinance introduced into evidence.

2. There was no evidence of any violation of the provisions of the Southern Standard Building Code which were incorporated into this instruction.

3. The provisions of the Southern Standard Building Code do not apply because the subject slope, or asphalt buildup, was not a part of the building.

4. Even if the provisions were applicable, there was no violation.

Of course, we agree with appellant that the courts cannot take judicial notice of city ordinances, but this does not mean that an ordinance must be actually introduced into evidence in its entirety, before it can be given consideration by the court, especially where the particular wording of the ordinance is not an issue. Here, the issue made by the pleadings was whether the Southern Standard Building Code applied to the ramp, and, if so, which version of that code applied. Appellees' allegation in an amendment to their complaint that the Southern Standard Building Code was adopted by a city ordinance was not denied by appellant in its answer. The only controversion of appellees' allegations in that regard was by statements that an improper edition had been quoted and cited by appellees, and that the "ramp requirements" of the code were inapplicable to the ramp on which Mrs. Lawson fell. In a pretrial hearing, Charles Royse, a witness for appellant testified that the 1961 edition of the code applied when the permit for the construction of the building was issued by the City of Pine Bluff. He also testified at the trial that he had determined that this edition was in effect at the time.

A pretrial order on a motion of appellant to strike an amendment to the complaint in which appellees first asserted applicability of this code recites that, upon stipulation of counsel, the 1960-61 edition was in force and effect as an ordinance of the city at the time of the construction. In a motion for continuance, appellant stated that it had intended using the technical director of the Southern Building Code Congress to testify whether "the applicable section of the Southern Standard Building Code as adopted by the city ordinance of Pine Bluff applies to the entrance way, sidewalk and parking lot of the defendant, which is the subject of this lawsuit."

At the time the instruction was given, the fact that the City of Pine Bluff had adopted this code when the ramp was constructed was no longer an issue, so there was no error in giving the instruction simply because the ordinance was not introduced.

Among the provisions of the code recited in instruction No. 9 was one making its provisions applicable to every building or structure or any appurtenances connected or attached to such buildings or structures. Another required that slopes of floors required in exits from buildings should not exceed one in ten. Still another required that a ramp be of non-slip material and that its slope not exceed one in ten. The gist of appellant's argument in his second basis for reversal on this point is that the witnesses could not, or did not, specify by number any section of the code that had been violated and, in any event, failed to specify any of the provisions recited in the instruction.

We do find evidence, however, that the ramp, admittedly on a slope of greater than one in ten, was governed by the code provisions. Leo Tyra, a registered professional engineer, who was City Engineer for the City of Pine Bluff and, as such, head of the city inspection department when appellant's building and improvements were constructed, testified on behalf of appellees. He testified he had concluded that the provision with reference to exit outlets and ramps recited in the instruction applied because appellant's building was a public garage, since it had the capacity to store more than four automobiles and automobiles were on display for sale to the public. From this premise he "improvised" that the limitations on slopes applied. Tyra also expressed the opinion that four feet of level concrete between the showroom exit door through which Mrs. Lawson came and the asphalt ramp was actually a landing rather than a sidewalk. On cross-examination, Tyra admitted there was no express provision of the code requiring ramps in a public garage, but found an implication that they were required in sections of the code relating to public garages and referring to enclosed and unenclosed ramps. He also admitted that if the business were a maintenance shop rather than a garage there would be doubt about the application of the ramp requirements and that, under a strict definition, the building stopped at the curbline of the concrete walkway. Ellis McCorkle, a registered professional engineer and safety consultant, agreed that the implication of the provisions relating to public garages was that the ramp requirements applied in this case. He was of the opinion that, as constructed, the asphalt "build up" was

a part of the building. We take this evidence to be adequate to show which provisions were to be considered in determining whether there had been a violation of the code.

We have already referred to some of the testimony tending to establish that the slope, ramp or asphalt "build up" constituted a part of the building. Charles Royse, the Pine Bluff building inspector, who issued the permit for the building, said the provisions of the code did not apply to parking lots, and the four feet of level concrete at the doorway met all the requirements of the code. He considered this concrete surface as part of the building and the asphalt slope as part of the parking lot. He stated the asphalt slope was not a part of the building plans he had inspected with the application for the permit, but, even if it had been, he would not have considered it as a part of the building. Robert Sullivan, Director of Education for the Southern Standard Building Code Congress, by which the code was promulgated, was of substantially the same opinion as Royse. Sullivan said that the exit requirements did not apply to anything outside the exterior walls and doorways of the building proper.

Perhaps, as Tyra conceded, a strict interpretation of the code would support appellant's position. But as pointed out through Tyra's testimony, § 101.2 of the code (recited in the instruction) declared it to be remedial and to be construed to secure beneficial interests in public safety and safety to life and property from hazards incident to construction, use and occupancy of buildings, structures or premises. Tyra also read § 101.3 providing that the code should apply to construction, use and occupancy and maintenance of every building or structure or any appurtenances connected or attached to such building or structures. We cannot say that, as a matter of law, the implications relied upon by Tyra are totally absent. We do not take the word "appurtenances" to be used in the technical legal parlance utilized in conveyancing. We take it to bear the commonly accepted nontechnical definition, i.e., "that which belongs to something else; adjunct; appendage; an accessory; something annexed to another thing more worthy." See Webster's New International Dictionary, Second Edition, Unabridged. See also, Webster's Third Edition. Accordingly, we cannot say that, as

a matter of law, the asphalt slope was not a part of the building.

Appellant also argues that the existence of four feet of level sidewalk or walkway extending outward from the showroom doors constituted complete compliance with the code, and that there was no violation, even if the code applied. Although we agree with appellant that there was very substantial evidence upon which such a conclusion might be reached, we cannot say this was the case as a matter of law for the reasons hereinabove stated. Thus, we cannot say the giving of instruction No. 9 was reversible error for any of the reasons argued by appellant.

Appellant filed two motions to strike amendments to the complaint. The first motion actually was based upon a contention that the Southern Standard Building Code did not apply. The second was based upon contentions that it did not apply to the facts because no ramps were required at the door from which Mrs. Lawson claimed to have exited. As previously pointed out, the first motion was denied upon the basis of the stipulation of counsel. The second motion was denied with the reservation by the court of a ruling on the admissibility of the code when it was tendered for introduction during the trial. We do not see how appellant was prejudiced by this ruling. It does not point out to us any objection made, or any further request for a ruling on the point, during the trial, to the introduction of code provisions. Appellant argues that the question of applicability of the provisions of the code was a question of law because neither party requested a jury instruction which would have presented a question of fact on this point. We cannot well consider other jury instructions or requests therefor, because neither party abstracts anything except instruction No. 9 referred to hereinabove. Although it seems to us that such an issue of fact was presented, as we have previously indicated, still, we do not think that the requesting, giving or refusing of an instruction to that effect has any bearing on the denial of the motion to strike.

Furthermore, as appellees aptly argue, appellant waived the motion to strike, except for the right to object to the evidence when offered. An answer which does not specifically reserve a motion to strike, which has either been denied or

which has not been ruled upon by the court, waives the motion. *Street* v. *Shull*, 187 Ark. 180, 58 S.W. 2d 932; *Farmers' Exchange* v. *Drake*, 171 Ark. 1127, 287 S.W. 371.

Even if we agreed with appellant that no evidence was offered to show any negligence on its part other than the alleged violation of the building code, we could not say the court erred in failing to direct a verdict, as appellant contends, because as we have clearly indicated, the evidence did present fact questions for the jury's determination. If the code applied, and if the facts showed that it was violated, there was evidence of negligence and a question of proximate cause was presented.

The judgment is affirmed.

BYRD, J., concurs.